**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHARLES ROBERT RALPH, JR.,** | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 21-00082-CG-B |
| | * |
| **ZARO TRANSPORTATION, LLC,** | * |
| | * |
| Defendant. | * |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Charles Robert Ralph, Jr.'s motion to remand (Doc. 5). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiff's motion be **GRANTED,** and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama, for want of jurisdiction.

I. **BACKGROUND**

This personal injury action arises from a November 25, 2019, motor vehicle accident that occurred in Mobile County, Alabama. Plaintiff Charles Robert Ralph, Jr. ("Ralph") commenced this action by filing a complaint against Defendant Zaro Transportation, LLC ("Zaro") in the Circuit Court of Mobile County,

Alabama.[1]  (Doc. 1 at 15-23).  In his complaint, Ralph alleges that Sergio Manzanarez Martinez ("Martinez")[2] was driving a tractor trailer truck in the line and scope of his employment with Zaro, when he caused a "high-energy crash" with Ralph's vehicle and caused Ralph to be injured.  (Id. at 16-17).  Ralph alleges that as a result of the accident, he

> was caused to suffer damage, is presently suffering damage, and will continue to suffer damage in the future, such damages including but not limited to the following: serious bodily harm, personal injury, permanent injury, medical bills (past and future), permanent physical impairment, permanent scarring, disability, physical pain and suffering (past and future), mental anguish, medical expenses, financial loss, inconvenience, annoyance, and loss of enjoyment and quality of life (past and future).

(Id. at 17-19).  Ralph asserts four claims against Zaro, namely: "Negligence" (count one); "Wantonness" (count two); "Negligent Hiring, Retention, Monitoring, Supervision, and/or Training" (count three); and "Wanton Hiring, Retention, Monitoring, Supervision, and/or Training" (count four).  (Id. at 17-22).  For

---

[1] Ralph's complaint also names several fictitious defendants, "a practice which is allowed under the state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure."  Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1283 n.1 (S.D. Ala. 2000); see also 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").  Because this case is due to be remanded, it is recommended that no action be taken as to the fictitious defendants.

[2] Martinez is not a party to this action.

relief, Ralph seeks compensatory and punitive damages in an unspecified amount, as well as interest and costs. (See id. at 18-20, 22).

Zaro timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, and asserted diversity jurisdiction under 28 U.S.C. § 1332. (Id. at 1-12). Zaro alleges that there is complete diversity of citizenship between the parties because Ralph is a citizen of Alabama and Zaro is a Texas limited liability company with its principal place of business in Texas and a sole member who is a citizen of Mexico.[3] (Id. at 3-4). Zaro further contends that although Ralph's complaint does not contain a specified demand for damages, "the nature of the complaint's allegations," "correspondence from Plaintiff's counsel, judicial experience, and common sense" demonstrate that the amount in controversy in this case exceeds the $75,000 jurisdictional threshold. (Id. at 6-9).

In response, Ralph filed the instant motion seeking remand of this action to state court, along with a brief in support. (Docs. 5, 6). Zaro filed a response in opposition, and Relph filed a reply. (Docs. 10, 11). Having been fully briefed, Ralph's motion to remand is now ripe for resolution.

---

[3] Zaro's corporate disclosure statement reflects that its sole member is an individual who resides in Laredo, Texas. (Doc. 14).

## II. **STANDARD OF REVIEW**

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441. This includes actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendant and an amount in controversy that exceeds $75,000, exclusive of interest and costs. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). The amount in controversy "is less a prediction of how much the plaintiffs are ultimately likely to recover, than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th

4

Cir. 2014) (quotation omitted).

The removing party "bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." Dudley v. Eli Lilly and Co., 778 F.3d 909, 913 (11th Cir. 2014). Where, as in this case, the jurisdictional amount is not facially apparent from the complaint, the "court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden." S. Fla. Wellness, 745 F.3d at 1315. A court may rely on "its judicial experience and common sense" in determining whether a claim satisfies the amount in controversy requirement. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1064 (11th Cir. 2010). Although a court may not resort to "conjecture, speculation, or star gazing" to find that the jurisdictional threshold is satisfied, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010).

### III. **ANALYSIS**

The parties do not appear to dispute that there is complete

diversity of citizenship.[4]  Rather, Ralph argues that this case is due to be remanded because Zaro has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000.  (See Docs. 5, 6).

In its notice of removal, Zaro relies on the following to establish the requisite amount in controversy:

    a. "the nature of the complaint's allegations," including "the type of injuries and future necessary treatment, allegations of pain and suffering, permanent injuries, disability, permanent scarring, loss of enjoyment of life and punitive damages";

    b. an April 23, 2020 settlement demand letter from Ralph's counsel, which "was for an unspecified amount" but "made no attempt to qualify the demand as being an amount of $74,999.00 or less";

    c. the "incomplete medical billing number" of $19,088.41 included in Ralph's settlement demand letter, "reflecting medical charges from November 25, 2019 through April 23, 2020"; and

    d. "Ralph's failure to disclaim entitlement of more than $74,999.99".

(See Doc. 1 at 6-9).

In Zaro's response in opposition to Ralph's motion to remand, Zaro raises a new argument to justify removal.  Zaro cites (for the first time) 49 C.F.R. § 387.9, and it asserts that this

---

[4] Ralph's brief in support of his motion to remand states that Zaro has "failed to prove diversity of citizenship" (Doc. 6 at 1), but Ralph makes no argument to support that assertion.

6

regulation "requires all truckers to have insurance that will reimburse victims of accident[s] up to specific limits – now $750,000 for ordinary cargo." (Doc. 10 at 2).[5] Zaro argues that Ralph's demand letter should be viewed in conjuction with this regulation, and that when the letter and regulation are construed together, Ralph's letter "clearly makes a demand of no less than $750,000" by advising Zaro's liability insurance carrier to "put your insured on notice of our offer to settle for $ --- to protect your insured's best interests and insulate them from an excess judgment and avoid any personal attachable assets they may have that would be at risk." (Id.; see Doc. 1 at 54).

The Court first turns to Ralph's April 23, 2020 settlement demand letter, upon which Zaro relies, along with Ralph's complaint, to establish that the amount in controversy exceeds $75,000. "While [a] settlement offer, by itself, may not be determinative" of the amount in controversy, "it counts for something." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). "In determining what that 'something' is, courts draw

---

[5] "The Motor Carrier Act of 1980 ('MCA'), in addition to deregulating the trucking industry and reducing barriers to entry, addressed safety issues and financial responsibility for trucking accidents. . . . To that end, the MCA imposes a minimum insurance requirement on each motor carrier registered to engage in interstate commerce. . . . Motor carriers transporting non-hazardous property must demonstrate financial responsibility of at least $750,000. 49 C.F.R. § 387.9." Nat'l Specialty Ins. Co. v. Martin-Vegue, 644 F. App'x 900, 906 (11th Cir. 2016) (per curiam).

7

distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other." Montreuil v. Costco Wholesale Corp., 2020 U.S. Dist. LEXIS 43828, at *2, 2020 WL 1243383, at *1 (M.D. Ala. Mar. 13, 2020) (quotation omitted). A settlement offer that reflects "puffing and posturing . . . is entitled to little weight in measuring the preponderance of the evidence." Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). On the other hand, a settlement offer that provides specific information to support a plaintiff's claim for damages and thus offers a reasonable assessment of the value of the claim is entitled to more weight. Id.

In the April 23, 2020 demand letter, Ralph's counsel stated as follows regarding Ralph's injuries and settlement demand:

> Mr. Ralph was treated at the Providence Hospital for injuries relative to his head, neck and back. He followed up with the VA and chiropractor for continuing pain.
>
> . . . .
>
> **Injuries, Symptoms, Diagnosis, Tests & Treatment:**
>
> CT Abdomen/Pelvis w Contrast
> CT Brain
> CT Thorax
> X-Ray Cervical Spine
> X-Ray Chest
> Lumbar Strain
> Back Pain
> Neck Pain

8

```
Head Pain
Lightheaded
Numbness in Fingers
Post-Traumatic Stress Disorder
```

**Medical Charges:**

```
Providence Hospital                 $14,133.41
Mobile Emergency Physicians         $1,400.00
Radiology Associates of Mobile      $560.00
Foster Chiropractic                 $2,995.00
Total Charges:                      $19,088.41
```

**\*\*Medical Records from the VA will be supplemented upon receipt.**

In light of the above, we demand $ --- as full and final settlement. Taking into consideration the clear negligence established by Mr. Martinez, it is our position that a verdict against your insured would be in excess of our demand. Please be advised that we intend to present evidence and arguments at trial to the jury not only to award compensatory damages, but punitive damages as well. An award for punitive damages will not only punish Mr. Martinez for his wrongful acts but protect the public by deterring Mr. Martinez and others from doing such acts in the future.

As such, please put your insured on notice of our offer to settle for $ --- to protect your insured's best interests and insulate them from an excess judgment and avoid any personal attachable assets they may have that would be at risk.

Please contact my paralegal . . . if there is any further documentation you need as soon as possible. Our client agrees to accept $ --- as full and final settlement for all claims. Please contact our office within seven (7) days of receipt to discuss this matter.

(Doc. 1 at 52-54).

The Court finds that the bulk of this demand letter is little more than pre-suit posturing; therefore, it is entitled to little weight. The letter demanded no specific sum, and instead left

9

blank the demand amount.[6] Zaro suggests that 49 C.F.R. § 387.9, a federal financial responsibility regulation for truckers, renders the generic language in Ralph's demand letter that references "an excess judgment" a demand for at least $750,000. (See Doc. 10 at 2). However, Ralph's demand letter makes no mention of 49 C.F.R. § 387.9, and there is nothing before the Court that suggests that Ralph's counsel was relying on the regulation in drafting the demand letter. Thus, the boilerplate demand language in Ralph's demand letter regarding an excess judgment and attachable assets cannot be reasonably construed as a demand to settle for no less than $750,000. See also Capps v. Winn-Dixie Stores, Inc., 2019 U.S. Dist. LEXIS 189838, at *5, 2019 WL 5688148, at *2 (M.D. Ala. Nov. 1, 2019) (finding defendant's argument "that Plaintiff's counsel's statements in the demand letter, not the demand itself, show that the amount-in-controversy threshold has been met" to be unpersuasive). Furthermore, the extent and severity of Ralph's injuries are not clear because the demand letter merely lists his symptoms, diagnoses, and tests, and fails to detail his course of treatment.

As a whole, the demand letter does not offer a reasonable assessment of the value of Ralph's claim; however, the letter does list his then medical charges as totaling $19,088.41. (See Doc.

---

[6] "$ ---" was listed in the space for a demand amount. (See Doc. 1 at 54).

1 at 54). These medical charges reflect an honest assessment of one component of Ralph's damages and therefore will be considered. See Cabezudo-Vazquez v. Ross Dress for Less, Inc., 2018 U.S. Dist. LEXIS 238737, at *6, 2018 WL 7291072, at *2 (S.D. Fla. June 19, 2018). Aside from this specific figure, the demand letter contains precious little else to suggest that Ralph has additional damages exceeding $55,911.59. While Zaro asserts that the $19,088.41 figure listed in the demand letter is an "incomplete medical billing number" (Doc. 1 at 7),[7] the demand letter does not point to future treatment, nor does it provide any estimate of additional treatment costs to be incurred. In sum, Ralph's demand letter evidences medical expenses totaling $19,088.41 as of April 23, 2020, but does little else to aid the Court in determining whether the amount in controversy exceeds $75,000. Thus, the Court must consider whether the allegations in Ralph's complaint can carry this case the rest of the way over the jurisdictional threshold.

Zaro argues that the broad array of injuries and damages alleged in Ralph's complaint, including "serious bodily harm, personal injury, permanent injury, medical bills (past and future), permanent physical impairment, permanent scarring, disability, physical pain and suffering (past and future), mental

---

[7] The demand letter states that "[m]edical *records* from the VA will be supplemented upon receipt." (Doc. 1 at 54) (emphasis added). It does not indicate that Ralph had any outstanding medical bills.

11

anguish, medical expenses, financial loss, inconvenience, annoyance, and loss of enjoyment and quality of life (past and future)," support a finding that the amount in controversy exceeds $75,000. (See id. at 6, 17-19). However, as judges in this district have previously recognized, "merely listing categories of damage does not satisfy" a removing defendant's burden of establishing the requisite amount in controversy. See Robinson v. Clayton, 2012 U.S. Dist. LEXIS 171503, at *4, 2012 WL 6028940, at *2 (S.D. Ala. Dec. 3, 2012); Collinsworth v. Big Dog Treestand, Inc., 2016 U.S. Dist. LEXIS 84123, at *9, 2016 WL 3620775, at *3 (S.D. Ala. June 29, 2016); Jones v. Marriott Int'l, Inc., 2018 U.S. Dist. LEXIS 85221, at *3-4, 2018 WL 2320947, at *2 (S.D. Ala. May 22, 2018); see also Williams, 269 F.3d at 1318, 1320 (finding allegations in complaint that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, incurred substantial medical expenses, suffered lost wages, experienced a diminished earning capacity, and would continue to suffer these damages into the future, along with a demand for both compensatory and punitive damages, not enough to render it facially apparent that the amount in controversy exceeded $75,000); Hill v. Toys "R" Us, Inc., 2010 U.S. Dist. LEXIS 100893, at *1-2, *7, 2010 WL 3834532, at *1, *3 (S.D. Ala. Sept. 24, 2010) (remanding case to state court for failure to prove the amount in controversy where the plaintiff alleged that she suffered back, neck, arm, and head

12

injuries, that she had experienced and continued to experience pain and suffering, emotional distress, and mental anguish, and that she had incurred ongoing medical expenses).

Moreover, general allegations of bodily harm, personal injury, permanent injury, disability, permanent scarring, past and future physical pain and suffering, mental anguish, inconvenience, annoyance, and past and future loss of enjoyment and quality of life, without more details, are "too vague and speculative for the undersigned to find that [Ralph's] claims surpass the jurisdictional threshold." See Collinsworth, 2016 U.S. Dist. LEXIS 84123, at *10-11, 2016 WL 3620775, at *4; see also Thompson v. Ortensie, 2017 U.S. Dist. LEXIS 174959, at *7, 2017 WL 4772741, at *2 (S.D. Ala. Oct. 23, 2017) ("From plain-vanilla statements that Thompson 'suffered bodily injuries' causing him to suffer pain in the past and future, and that Thompson received medical treatment and will incur medical treatment in the future, the Court is able to draw no meaningful conclusions about whether Thompson's injuries were 'trivial' or not, much less whether they are sufficiently severe to implicate an amount in controversy in excess of $75,000."). Similarly, the Court cannot estimate any future medical expenses that Ralph may incur based on the record before it, nor is there any evidence that Ralph's existing medical expenses exceed the amount stated in the demand letter.

Zaro also points to Ralph's wantonness claims and request for

punitive damages in support of its assertion that the amount in controversy is met. (See Doc. 1 at 7). "While a request for punitive damages does not automatically establish the amount-in-controversy, a court may properly consider punitive damages in the evaluation of whether a defendant has shown that the amount-in-controversy is satisfied." Hogan v. Mason, 2017 U.S. Dist. LEXIS 55055, at *9, 2017 WL 1331052, at *3 (N.D. Ala. Apr. 11, 2017). "But there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." Lambeth v. Peterbilt Motors Co., 2012 U.S. Dist. LEXIS 67591, at *14-15, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012).

Given the record before this Court, the undersigned cannot estimate the value of Ralph's punitive damages claims without engaging in pure speculation. Zaro has not placed a value on Ralph's punitive damages claims or presented evidence that would assist the Court in assigning even a ballpark value to such claims. Ralph's complaint generally asserts that Martinez acted negligently and wantonly in causing the vehicle accident, and that Zaro negligently and wantonly hired, trained, monitored, supervised, and instructed Martinez. But the only relevant factual allegation relating to Martinez's or Zaro's actions is that Zaro, "by and through its employee [Martinez], failed to operate its tractor trailer truck on northbound Rangeline Road and in a safe

14

manner." (Doc. 1 at 17). Ralph's demand letter supplies some further detail, stating that "Mr. Martinez entered Mr. Ralph's lane of traffic, forcing Mr. Ralph to leave the roadway in an attempt to avoid Mr. Martinez's vehicle crashing into his. As Mr. Ralph re-entered the roadway, Mr. Martinez and Mr. Ralph's vehicles collided, causing Mr. Ralph's vehicle to overturn." (Id. at 52). Taken together, these allegations do not suggest that Martinez's or Zaro's actions were or might have been so egregious or reprehensible to support a substantial punitive damages award, nor has Zaro made any such showing.

Finally, Zaro contends that the "complaint's failure to disclaim entitlement to more than $74,999.99 further supports the fact that more than $75,000.00 is 'in controversy.'" (Id. at 9). As an initial matter, Zaro does not explain why Ralph would have been expected to *disclaim* entitlement to damages above a specific amount in his state court pleading. Nor does Zaro assert that it ever requested Ralph to stipulate to the amount in controversy, much less that he refused to do so. Even if Zaro had shown a refusal to stipulate - which it has not – Ralph's refusal to stipulate to the amount in controversy, under the circumstances of this case, would not be sufficient to satisfy the requisite amount in controversy. See Ruffin v. Clark, 2018 U.S. Dist. LEXIS 184037, at *13, 2018 WL 6037552, at *6 (S.D. Ala. Oct. 25, 2018) (finding that plaintiff's "failure to stipulate to an amount ha[d] little

15

if any probative value for determining the amount in controversy"), report and recommendation adopted, 2018 U.S. Dist. LEXIS 195777, 2018 WL 6031349 (S.D. Ala. Nov. 16, 2018); see also Williams, 269 F.3d at 1320 (holding that plaintiff's "refusal to stipulate standing alone does not satisfy [defendant's] burden of proof on the jurisdictional issue").

In sum, the Court must determine whether Zaro has demonstrated, from the allegations in Ralph's complaint and settlement demand letter, that the amount in controversy exceeds the jurisdictional threshold. After reviewing the evidence, the undersigned finds that Zaro has failed to demonstrate by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Accordingly, Ralph's motion is due to be granted, and this action is due to be remanded to state court.

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that the Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the requisite amount in controversy is not met. Accordingly, it is recommended that Ralph's motion to remand (Doc. 5) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Mobile County, Alabama, for want of federal jurisdiction.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **5th** day of **May, 2021.**

                                            **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**